UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANE B.,[1]

      **Plaintiff,**

  v.                                  **Civil Action 1:23-cv-169**
                                          **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Shane B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability and Supplemental Security Income benefits. This matter is before the undersigned for a ruling on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply Memorandum (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

                **I.      BACKGROUND**

Plaintiff protectively filed his application for Title II disability insurance benefits on October 28, 2020, and his application for Title XVI supplemental security income benefits on November 3, 2021, alleging that he became disabled on November 17, 2019. After Plaintiff's

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephone hearing on January 25, 2022, and issued an unfavorable determination on March 3, 2022. That unfavorable determination became final on January 24, 2023, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts a single contention of error: the ALJ erred in failing to find that Plaintiff did not meet or medically equal Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) at step three of the sequential evaluation process. (Pl.'s Statement of Errors 11–14, ECF No. 8.) The undersigned disagrees.

## II. THE ALJ'S DECISION

On March 3, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–32.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

since the alleged onset date of November 17, 2019. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the severe impairments of unspecified arthropathies; carpal tunnel syndrome; cervical radiculopathy; cervical spondylosis; depressive, bipolar and related disorder; substance addiction disorder (drugs); and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–22.) [3]

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk 6 hours per 8 hour day and sit 6 hours per 8 hour day with normal breaks; can frequently climb ramps and stairs. Can never climb ladders, ropes or scaffolds. Can frequently balance as defined in the Selected Characteristics of Occupations. Can occasionally stoop kneel crouch and crawl. Can occasionally reach overhead bilaterally. Limited to frequent handling and fingering bilaterally. He must avoid all exposure to unprotected heights and heavy machinery. He can understand, remember, and carry out 1-4 step instructions. Able to maintain concentration and attention and sustained persistence and pace for tasks with no demands for fast-paced requirements or strict production quotas.

(*Id.* at 22.)

The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff would be unable to perform any of his past relevant work as a

---

[3] The ALJ concluded that Plaintiff did not meet or medically equal the requirements of Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint(s) in any extremity), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.05 (intellectual disorder) or Listing 12.11 (neurodevelopmental disorder). Plaintiff challenges only the ALJ's conclusion as to Listing 1.15.

sod layer or construction worker (*id.* at 30.), but that there were other jobs existing in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could also perform during the relevant period. These jobs included routing clerk, janitor, and garment sorter. (*Id.* at 31.) The ALJ further noted that if Plaintiff was limited to "no overhead reaching with occasional handling and fingering bilaterally," there would still be other jobs in the national economy that Plaintiff would be able to perform, including usher, blending tank tender, and fruit distributor. (*Id.* at 31.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 32.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff raises a single issue in his Statement of Errors (ECF No. 8): the ALJ erred in failing to find that Plaintiff met or medically equaled Listing 1.15. (Pl.'s Statement of Errors 11, ECF No. 8.) Plaintiff contends that the ALJ "gave absolutely no explanation nor offered any analysis for this finding" (*id*. at 12), and points to evidence in the record that he claims supports a determination that he has met Listing 1.15. (*Id.* at 13–14.)

The ALJ's finding that Plaintiff did not meet Listing 1.15 is supported by substantial evidence. In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). The claimant shoulders the burden of producing medical evidence that establishes that all elements are satisfied. It is not sufficient to come to close to meeting the

conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Here, Plaintiff challenges the ALJ's finding that his impairments do not meet Listing 1.15 (spinal disorders that result in nerve root compromise). The relevant Listing provides:

> 1.15 Disorders of the skeletal spine resulting in compromise of a nerve root(s), documented by A, B, C, and D:
>
> > A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
> > 1. Pain; or
> > 2. Paresthesia; or
> > 3. Muscle fatigue.
>
> AND
>
> > B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
> > 1. Muscle weakness; and
> > 2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
> > 3. Sensory changes evidenced by:
> > > a. Decreased sensation; or
> > > b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
> > 4. Decreased deep tendon reflexes.
>
> AND
>
> > C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.
>
> AND
>
> > D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
> > 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

6

> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15.

The Commissioner does not contest that Plaintiff meets the criteria A, B or C. (Def.'s Mem. in Opp'n 7 (ECF. No. 10), and Plaintiff does not argue that he meets the criteria set forth in factor D1 or D2 above. Therefore, the focus of Plaintiff's argument and the Commissioner's response is whether Plaintiff established factor D3, and thus qualifies as disabled.

Plaintiff argues that "[t]he ALJ gave absolutely no explanation nor offered at analysis for" her finding that Plaintiff did not meet Listing 1.15. (Pl.'s Statement of Errors 12, ECF No. 8.) When evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted). On the other hand, an ALJ's explanation of her step-three determination need not be elaborate. The Court of Appeals has consistently rejected a heightened articulation standard, noting in *Bledsoe v. Barnhart* that the ALJ is under no obligation to spell out "every consideration that went into the step three determination" or "the weight [she] gave each factor in [her] step three analysis," or to discuss every single impairment. 165 F. App'x 408, 411 (6th Cir. 2006). Nor is the procedure so legalistic that the requisite explanation and support must be located entirely

7

within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis. *See id.*

Again, to establish factor D3, a claimant must establish "an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15. "Fine movements" involve use of the "wrists, hand, and fingers, such movements include picking, pinching, manipulating and fingering." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00E4. "Gross movements involve use of . . . shoulders, upper arms, forearms and hands; such movements include handling, gripping, grasping, holding, turning, and reaching. Gross movements also include exertional abilities such as lifting, carrying, pushing, and pulling. Examples of performing fine and gross movements include, but are not limited to, taking care of personal hygiene, sorting and handling papers or files, and placing files in a file cabinet at or above waist level." *Id.*

Plaintiff identifies the evidence in the record which he believes establishes factor D3, and thus satisfies Listing 1.15:

- Plaintiff submitted a Function Report he submitted to the Social Security Administration in December 2020 in which he reported that could not lift anything of weight, could not lift his arms above his head, and could not grasp anything and hold onto it. (Pl's Statement of Errors 13, ECF No. 8; R. 214.)

- Plaintiff testified at the hearing that he had issues using both hands, stating that he had a hard time gripping a pen, was dropping things, had cramps in his hand while doing a word search and only being able to hold a glass of water for 10 minutes. (*Id.* at 14; R. 24, 61–63.) Plaintiff also testified that had difficulty gripping with his left hand, could only reach a little and could not raise his arms overhead. (*Id.*)

- In several instances, Plaintiff self-reported to medical providers that he had numbness and tingling in his hands (R. 397, 538, 679). He also reported difficulty with fine

8

- motor skills to providers in November 2020 and November 2021. (R. 421–422, 720, 721.)

- In December 2021, Plaintiff reported to a medical provider that he was having trouble with dexterity, felt he was getting weaker and had numbness and tingling in his arms. (R. 714.)

(*See* Pl.'s Statement of Errors 13–14, ECF No. 8.)

Although the ALJ's finding that Plaintiff did not meet or medically equal Listing 1.15 is, standing alone, only a conclusory statement, a review of the whole decision, particularly the ALJ's RFC analysis, provides substantial evidence to support the ALJ's finding that Plaintiff did not meet or medically equal Listing 1.15. In her RFC analysis, the ALJ summarized the evidence presented in Plaintiff's medical records:

- On June 1, 2020, while participating in physical therapy, Plaintiff had a full passive range of motion with slight guarding of left shoulder, a full passive range of motion in the right shoulder; 4/5 strength in left shoulder, 4/5 strength in right shoulder; normal reflexes and sensation. (R. 26.)

- An August 12, 2020, MRI of Plaintiff's thoracic spine revealed multilevel tiny anterior disc displacements; mild cervical lordosis and C5-6 and C6-7 shallow posterior mixed spondylotic disc displacements are partially characterized; trace disc bulges at T1-2, T2-3, T3-4, and T9-10; shallow right lateral disc protrusion gently encroaches upon the right ventral dural sac at T6-7 and T8-9; disc bulge at T10-11; no central or foraminal stenosis. Upon follow up on August 18, 2020, although Plaintiff reported increased pain radiating up into his shoulder blades, during a physical examination, the range of motion in Plaintiff's bilateral upper extremities was unremarkable and pain free, and there were normal reflexes and strength in his bilateral upper extremities. (*Id.* at 26-27.)

- A physical examination September 15, 2020 was largely unchanged from August. (*Id*. at 27.)

- On October 13, 2020, the Plaintiff received medial branch blocks on the left T7-T10 levels. Upon follow up the Plaintiff reported that the medial branch block was ineffective at treating pain (*Id*.). The claimant was encouraged to continue a home exercise program (*Id*.)
.
- Plaintiff reported neck pain on November 5, 2020, indicating that pain steadily increased since the motor vehicle crash and that his neck pain was 4/10 and shoulder and arm pain was 7/10. Conservative treatment was recommended, including cervical

9

- epidural injections and the home exercise program (*id.*), but did not follow up for a cervical epidural steroid injection until January 19, 2021 (*Id.*)

- During a consultative examination on January 29, 2021, Plaintiff reported that he walks for exercise, enjoys bowling, and attends to his own grooming and hygiene. He also reported that he can perform light household chores (*Id.*).

- Plaintiff reported shoulder pain during treatment at Eastside Internal Medicine on July 26, 2021, and November 12, 2021. Conservative treatment was again recommended, and Plaintiff The claimant also participated in treatment with a chiropractor. (*Id.*).

- On November 14, 2021, Plaintiff presented with progressive neck pain that radiated down his bilateral upper extremities, reported numbness and tingling in his arms and hands and frequently dropping things (*Id.*). He reported that symptoms were progressively worse and that he was now having difficulty with balance. (*Id.* at 28.)

- Plaintiff's spine was imaged on November 15, 2021, which revealed disc space narrowing C5-6 and C6-7 with anterior spurring and minor posterior spurring CS-6. Alignment intact without evidence of dynamic instability and no significant malalignment Minor spondylosis thoracic and lumbar spine. (*Id.*)

- Plaintiff's spine was imaged again on December 8, 2021, which revealed severe bilateral spondylotic foraminal stenosis C6-7, no change in severe compression of the exiting C6 nerve roots; and severe right spondylotic foraminal stenosis, moderate spinal stenosis C5-6. (*Id.*)

- On January 5, 2022, the Plaintiff underwent a C3-5 anterior cervical diskectomy for decompression of spinal cord and nerve roots; a C3-5 anterior cervical arthrodesis with nuvasive PEEK graft filled with Allograft and locally harvested autograft; C3-5 anterior cervical plating with medtronic plate and screws; microscopic dissection; intraoperative fluoroscopy; and SEEP, EMO, motor evoked potential monitoring. (*Id.*)

The ALJ further noted that Plaintiff "testified that he has been driving on average 3 days a week since his alleged onset date but driving more now after his wife damaged her vehicle." (*Id.* at 19.) Also, the ALJ noted that Plaintiff's hobbies includes "fishing, which he does as much as he can because he can alternate sitting and standing." (*Id.* at 24.)

  The undersigned concludes that the ALJ's determination that Plaintiff did not meet Listing 1.15 is supported by substantial evidence, despite the contrary evidence Plaintiff cites. The relevant

10

part of the listing requires Plaintiff to establish "[a]n *inability* to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15D3. The evidence Plaintiff identifies does not meet that standard and does not negate the substantial evidence supporting the ALJ's determination.

As explained above, Listing 1.15D3 refers to 1.00E4, which provides examples of fine and gross movements. One of the examples given include taking care of personal hygiene, sorting and handling papers, or placing files in a cabinet at or above waist level. *Id.* § 1.00E4. The ALJ noted in here decision that Plaintiff was able to attend to his own grooming and hygiene. (R. 27). The ALJ also took into consideration that Plaintiff "walks for exercise, enjoys bowling . . . . [and] could perform light household chores." (*Id.*) The ALJ's decision explains that Plaintiff testified that he "has been driving on average 3 days a week since his alleged onset date but driving more now after his wife damaged her vehicle." (*Id.* at 19.) The ALJ also noted that Plaintiff's [hobbies] include[] fishing, which he does as much as he can because he can alternate sitting and standing." (*Id.* at 24.) Plaintiff's attending to his own grooming, driving, bowling, performing light household chores and fishing are substantial evidence to support the ALJ's finding that Plaintiff did not establish an inability to use both upper extremities. As a result, it was not error for the ALJ to conclude that Plaintiff's impairments did not meet the criteria of Listing 1.15.

The evidence relied upon by Plaintiff consists primarily of his own subjective statements of symptoms and limitations, but "an ALJ is not required to accept a claimant's subjective complaints." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Furthermore, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects

of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 24.) As set forth above, the ALJ identified several instances where Plaintiff sought medical attention for pain, while a concurrent physical examination reported normal or near normal functioning in his upper extremities.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, the Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE